

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED101279 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | 12SL-CR03107-01 |
| | ) | |
| SAMUEL SPIRES, | ) | Honorable Michael T. Jamison |
| | ) | |
| Appellant. | ) | Filed: November 12, 2014 |

## Introduction

Samuel Spires (Spires) appeals from the judgment and sentence upon his conviction following a jury trial of three counts of unlawful possession of a concealable firearm, Section 571.070, RSMo. (Cum. Supp. 2010). Spires argues the trial court erred in overruling his motion to suppress evidence and in admitting the firearms, because the officer did not have reasonable, articulable suspicion to stop the car Spires was in. We affirm.

## Background

Spires was charged as a prior offender with three counts of the class C felony of unlawful possession of a concealable firearm. He filed a motion to suppress the three firearms constituting the basis for the charges. He argued the seizure was incident to an

unlawful warrantless search, in that it was conducted pursuant to an illegal traffic stop. At the pre-trial hearing on the motion to suppress, Officer Adam Lane testified that on the night of June 30, 2011, at approximately 11:40 P.M., he observed a vehicle driving in a parking lot without its lights on in a high-crime area. He drove past the vehicle and observed a passenger in the backseat with a bandana, or similar type of cloth, covering the bottom half of his face. Based on his belief that the vehicle was required to have its headlights on and "the suspicious nature of the person having a bandana over his face at that time and place," Officer Lane conducted a traffic stop, which led to the discovery of the firearms. The trial court denied the motion to suppress the firearms, finding that while the traffic stop was not a legitimate stop because Missouri law does not require the use of headlights while operating a vehicle in a parking lot, Officer Lane had reasonable suspicion to conduct a Terry[1] stop based on the passenger's suspicious face covering. Defense counsel objected to the court's ruling.

The following facts were adduced at the trial, viewed in a light most favorable to the jury verdict.[2] Officer Lane testified to his reasons for stopping the vehicle, which were the same as he testified to at the suppression hearing. He then testified that after he stopped the vehicle, the two backseat passengers fled. When he approached the vehicle, he observed through the window three long firearms lying in the backseat area and a pistol in the center console area. He seized the firearms, noting they were loaded. The firearms, identified as a Marlin .22 rifle, a Remington 870 express pump action shotgun, and a Mossberg 12-guage shotgun, were entered into evidence. Defense counsel stated there was "no objection" to the admission of all three firearms. However, before the

---

[1] Terry v. Ohio, 392 U.S. 1, 20 (1964).
[2] State v. McCrady, 364 S.W.3d 709, 711 (Mo. App. E.D. 2012) (view facts in light most favorable to jury verdict).

2

court received evidence about the functionality of the firearms, defense counsel renewed her objection to the firearms on the same basis as her motion to suppress. The court confirmed that the objection was to the firearms, stated the parties had already discussed the objection, and noted that defense counsel "had a continuing objection." Firearms expert William George testified that all three firearms were operational.

The jury found Spires guilty on all three counts of unlawful possession of a firearm. The trial court sentenced him to six years of imprisonment in the Missouri Department of Corrections on each charge, to be served concurrently. Spires filed a motion for a new trial, asserting, as relevant for this appeal, that the trial court erred in denying his motion to suppress the firearms seized by Officer Lane. The trial court denied the motion. This appeal follows.

## Discussion

In his sole point on appeal, Spires argues the trial court erred in overruling defense counsel's motion to suppress the firearms evidence and in admitting the firearms at trial, because the evidence was discovered and seized as a result of an invalid traffic stop not based on reasonable suspicion, thus violating his Fourth Amendment right to be free from unreasonable seizures. We disagree.

Assuming without deciding that the issue was sufficiently preserved for appeal, we review the trial court's denial of a motion to suppress for whether the ruling is supported by sufficient evidence. State v. McCleary, 423 S.W.3d 888, 893 (Mo. App. E.D. 2014). However, whether conduct violates the Fourth Amendment is an issue of law that this Court reviews *de novo*. State v. Ashby, 339 S.W.3d 600, 603 (Mo. App. E.D. 2011). We find that there was no Fourth Amendment violation.

3

The Fourth Amendment of the United States Constitution protects the right to be secure against unreasonable searches and seizures. State v. Waldrup, 331 S.W3d 668, 672 (Mo. banc 2011). Individuals riding in a vehicle are "seized" within the meaning of the Fourth Amendment when a police officer stops the vehicle to investigate suspected criminal activity. State v. Martin, 79 S.W.3d 912, 916 (Mo. App. E.D. 2002). Generally, a search or seizure is allowed only if the police have probable cause to believe the person has committed or is committing a crime. Beck v. Ohio, 379 U.S. 89, 91 (1964). One exception to this rule is the Terry stop, which allows an officer to perform a minimally invasive investigatory stop if the officer has a reasonable suspicion supported by "specific articulable facts" that those stopped are engaged in criminal activity. Terry v. Ohio, 392 U.S. 1, 20 (1964).

Reasonable suspicion exists where a police officer observes unusual conduct that leads the officer to reasonably conclude in light of his experience that criminal activity "may be afoot." Waldrup, 331 S.W.3d at 673 (citations omitted). The officer need not be certain that a crime is being committed, but needs merely reasonable suspicion. State v. Goff, 129 S.W.3d 857, 864 (Mo. banc 2004). Although reasonable suspicion is a lesser standard than probable cause, the Fourth Amendment requires that there exist "at least a minimal level of objective justification for making the stop." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). The trial court should examine the totality of the circumstances to determine whether the standard for reasonable suspicion has been met. Waldrup, 331 S.W.3d at 673.

Here, Officer Lane testified that when he passed the vehicle at approximately 11:40 P.M., he observed a rear passenger with a bandana covering the lower half of his

face. The parking lot was in a high-crime area. Officer Lane thought the face covering at that time and place was "odd" and "suspicious," and he wanted to investigate further. We agree with the trial court that wearing a bandana or cloth over one's face is indicative that the person is trying to disguise himself, which should cause a reasonable police officer to conclude in light of his experience that criminal activity "may be afoot." See id. Thus, Officer Lane's testimony that an individual in the vehicle had covered his face with a bandana constituted specific articulable facts sufficient to cause a reasonable suspicion that persons in the vehicle might be involved in criminal activity.[3] See Terry, 392 U.S. at 20. Accordingly, no Fourth Amendment violation occurred when Officer Lane engaged his lights and sirens to pull over the vehicle. See Waldrup, 331 S.W.3d at 673.

Having found that Officer Lane had reasonable suspicion to perform a Terry stop, we also find that the trial court's denial of Spires's motion to suppress was supported by substantial evidence and the court did not err in admitting the evidence at trial. Point denied.

### Conclusion

The judgment of the trial court is affirmed.

Gary M. Gaertner, Jr., Judge

Kurt S. Odenwald, P. J., concurs.
Robert G. Dowd, Jr., J., concurs.

---

[3] We note that, regardless of the trial court's finding that driving without headlights in a parking lot is not a violation of state or municipal law, considering that the parking lot here was in a high-crime area, the act of driving at night without headlights in the parking lot could support a reasonable suspicion that criminal activity was afoot, sufficient to support a Terry stop. See State v. Deck, 994 S.W.2d 527, 535 (Mo. banc 1999) ("[e]ven if there was no probable cause to stop Deck for the *offense* of driving without lights, the *act* of driving without lights late at night in a residential parking lot was some indication that criminal activity was afoot, separate from the offense of driving without lights, itself") (emphasis in the original).

5