**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Kenneth SPURGEON, Defendant–
Appellant.**

No. 20036.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 27, 1995.

Phillip A. Glades, Anita K. Oakes, Carrie
Sue Genisio, Glades & Associates, P.C., Jop-
lin, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Fer-
nando Bermudez, Asst. Atty. Gen., Jefferson
City, for plaintiff-respondent.

GARRISON, Judge.

Kenneth Spurgeon (Appellant) was
charged, as a persistent offender,
§ 577.023.1(2),[1] with the Class D felony of
driving while intoxicated, § 577.010. This
appeal follows his conviction by the trial
court, sitting without a jury, and sentence of
three years' imprisonment.

Appellant raises two issues on this appeal.
He first contests the trial court's finding that
the arresting officer was authorized to stop
his vehicle. Secondly, he alleges that the
result of a breath test admitted in evidence
was the product of an unlawful arrest and,
therefore, inadmissible.

Carthage, Missouri police officer Randy
Evans was on patrol on March 5, 1994 when
he observed Appellant driving a 1973 Chev-
rolet Blazer. Officer Evans testified that he
recognized Appellant as the same person he
had stopped in July, 1993 and whose driver's
license was, at that time, under revocation.

1. All references to statutes are to RSMo 1994.

When the officer saw Appellant, he remembered that occurrence, believed that Appellant's license revocation was for at least one year, and did not believe the license had been returned. Based on this belief, Officer Evans pulled his vehicle behind Appellant's and activated his red lights. Up to that point the officer had not noticed any erratic movements by Appellant's vehicle. However, when he activated his red lights, Appellant's vehicle quickly increased its speed and made a sharp right turn onto a parking lot where it came to a sudden stop. Officer Evans then saw Appellant climb behind the front seat. When the officer approached the Blazer, he found Appellant lying partially in the back seat and partially on the floor. After ordering Appellant from the vehicle he also noticed what he described as a strong odor of intoxicants, Appellant's eyes were red and bloodshot, his speech was slurred, and he swayed back and forth while standing. The officer testified that, in his opinion, Appellant was intoxicated.

Appellant denied that he was driving the Blazer. He told Officer Evans that another person was driving and "took off running" when the Blazer stopped. The officer, however, had not seen anyone leave the vehicle and proceeded to administer field sobriety tests, which Appellant failed. He also found that Appellant's driver's license had not been reinstated although the period of his suspension or revocation had expired on February 19, 1994. Instead, the officer found that Appellant had a learner's permit which required a licensed driver to be in the vehicle. Appellant later took a breathalyzer test resulting in a reading of .16.

■ In his first point relied on, Appellant contends that the trial court erred in finding probable cause for the officer to stop him in the absence of any erratic driving and based only on the officer's suspicion that Appellant's license might still be revoked. He argues that these facts "do not constitute reasonable suspicion or trustworthy information to warrant a reasonable belief that the defendant was driving while revoked."

Appellant raised this issue at trial by way of an oral motion to suppress. His counsel informed the trial court in opening statement that "the stop ... was illegal—and that any evidence gathered, such as an odor of intoxicants, a breath test, a field sobriety test, all should be kept out of evidence and suppressed, although we'll let it all in through their case and then ask you to make a ruling on that at a later time." The oral motion to suppress was made after the State presented its case, which consisted of the testimony of Officer Evans and a stipulation that another officer, if called, would testify that the breathalyzer machine was in proper working order and that it had been checked before and after the test administered to Appellant.

■ There was no objection to the form of the motion, which was based on the statements of Appellant's counsel that the officer's suspicion that Appellant might be suspended was not a reasonable suspicion sufficient to authorize the stop. Although the State had not agreed that a motion to suppress could be made after its evidence was presented, it offered no objection to this procedure. Parties may agree that a motion to suppress may be taken with the case for ruling after presentation of the evidence. *See State v. Stanley,* 736 S.W.2d 510, 512 (Mo.App.E.D. 1987); *State v. Ross,* 680 S.W.2d 213, 215 (Mo.App.W.D.1984). We consider, therefore, that the form of the motion and the timing of its presentment was with the consent of the State.

■ We conclude that Appellant's argument that the officer was not authorized to stop him is controlled by the principles flowing from *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Terry* stands for the proposition that an investigative detention, while a seizure, is authorized where specific and articulable facts and rational inferences from those facts give rise to a reasonable suspicion that a person has committed or is committing a crime. 392 U.S. at 15–20, 88 S.Ct. at 1877–80; *State v. Childress,* 828 S.W.2d 935, 945 (Mo.App.S.D. 1992). Probable cause to make an arrest is not necessary to make an intermediate stop authorized in *Terry. State v. Fernandez,* 691 S.W.2d 267, 269 (Mo. banc 1985).

■ There is no "bright line" test to determine the reasonableness of a *Terry*

**800**

stop. *State v. McKeehan*, 894 S.W.2d 216, 221 (Mo.App.S.D.1995). As much as a "bright line" rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria. *State v. Childress*, 828 S.W.2d at 945 (quoting *U.S. v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985)). It has been said that "[i]nvestigative detention is lawful if, in the totality of the circumstances, a particularized suspicion results that the person stopped is engaged in wrongdoing. The retrospective evaluation takes into consideration the inferences which would be drawn by a trained police officer and the evidence is to be viewed as seen by one versed in law enforcement." *State v. Sims*, 639 S.W.2d 105, 107 (Mo.App.W.D. 1982). *See also State v. McKeehan*, 894 S.W.2d at 220; *State v. Simmons*, 734 S.W.2d 513, 514 (Mo.App.E.D.1987). The circumstances leading to an authorized *Terry* stop do not have to exclude the possibility of innocent behavior. *State v. Fernandez*, 691 S.W.2d at 269.

In *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the United States Supreme Court said:

> Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose "observations lead him reasonably to suspect" that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to "investigate the circumstances that provoke suspicion."

468 U.S. at 439, 104 S.Ct. at 3150.

■ In the instant case, the officer recognized Appellant as the driver, had personal knowledge that eight months earlier Appellant's driver's license was under revocation, and knew that a revocation would be for at least one year. We hold that, under these facts, the officer was authorized to stop Appellant to investigate whether he was driving without a valid license.[2] When he did so and discovered facts indicating that Appellant

was driving while intoxicated, he was authorized to arrest him for that offense. The trial court did not, therefore, err in denying Appellant's motion to suppress.

This conclusion makes moot Appellant's second point that the evidence obtained after the stop should be excluded as a product of an unlawful arrest. The judgment of the trial court is affirmed.

MONTGOMERY, P.J., and FLANIGAN, J., concur.

---

**2.** Additionally, when the officer activated his red lights, Appellant suddenly increased his speed and turned sharply onto a parking lot before quickly stopping and getting into the back seat.

Flight alone may not provide probable cause for an arrest, but it may be a consideration justifying a decision to take action. *State v. McKeehan*, 894 S.W.2d at 220.